Good morning, Your Honors. May it please the Court. I'm Donald Tremblay. I represent the appellants in this case, Peggy and Doug Jennings, and we are here seeking a reversal of a motion for summary judgment that was granted by a bankruptcy judge. Our contentions, Your Honor, are that there are three particularly main issues in the case. The first issue is that with regard to her, there was absolutely no evidence to find that she could have had the required intent under Bankruptcy Code Section 523A-4 or 523A-6, and that is required for each debtor to have the subjective intent. Furthermore, another issue that I'd like to address with the underlying debt that was found by this particular judge, independent of any contract. And finally, and also on damages, that it was miscalculated at the very minimum. And with regard to Doug Jennings, it should be reversed because there was evidence in dispute as to what was actually his intent when he undertook certain conduct that the court found to be sufficient intent under 523A-4, A-6. Now the summary judgment law that this court has determined that's applicable, it was recently decided in an in-bank decision on September 2, 2016, in the American Legal Defense Fund versus the U.S. Food and Drug Administration. And that's cited to a 2012 case of Yamamoto. Now in that particular determination, that was a FOIA case, and as this court well knows, most FOIA cases go to bench trial. And just like in bankruptcy cases, most adversary proceedings that are within the core proceedings of the court go to a bench trial. But in Animal Legal Defense Fund, this court determined that the standard for motions for summary judgment is that they should only be granted when there are no disputed facts and no fact-finding by the judge. In this particular case, all the evidence that had been presented prior to the hearing for the judge's consideration by the Jennings in dispute was disregarded. The court actually said that it was self-serving. I've been a trial lawyer for a long time, and most declarations are self-serving. That's their whole purpose, is to get before the court. In fact, the Appellee's declarations were self-serving. But the point is that there were enormous amount of facts, a litany of facts, that would determine that the conduct undertaken by the Jennings, particularly by Doug Jennings, had a justification that was not a justification that you could find that there was necessarily subjective bad intent. And instead, the court made an objective standard. That's another error in this particular case, as we know from the determinations of this Court in Correa v. Sioux, and also in Geiger, the U.S. Supreme Court case. It is not an objective standard. It is a subjective standard. Now, I grant that that is with regard to 523a6, but it still applies to the fraud standard that's required, the culpable standard under 523a2, that is, the larceny and the embezzlement. Particularly with regard to Peggy Jennings, there's an – the court is making fact findings about her activity. It is undisputed that the Ramesses had – I had taken their depositions, I had presented to the court that they agreed that she had had no connections with them. In fact, they agreed that she never made any representations to them. She never represented them at all. All right? So the only evidence that they were relying upon was that she was a signatory to a deed that transferred the subject property solely to Mr. Jennings, her husband. And her testimony was, I did it because he asked me to do it. That's sufficient subjective intent of bad will, of something that is a culpable bad intent. That is, in fact, evidence that I didn't have bad will. And yet the judge said in this particular case that, well, she was a broker for 30 years, and she must have known what she was doing, and – and essentially saying what Doug Jennings may have done was important to her. You cannot import. You cannot transfer. As this Court has previously decided, you cannot transfer subjective intent. And so that is the problem with regard to Peggy Jennings. There is – there is absolutely no evidence to support the 523A4 or the 523A6. Now, with regard to Mr. Jennings, the Court tried to determine that he was, in fact, a fiduciary under 523A2. He was not. There clearly has to be a fiduciary with regard to the exact transaction that is occurring in the matter. It is undisputed that in the escrow instructions that created the underlying contract, that the escrow instructions clearly stated and the parties, the appellees agreed that the – that Mr. Jennings nor his law firm was going to be involved at all in this transaction. They waived the right to get their own attorney, which he had advised them of in this particular case. Counsel. Yes, Your Honor. So you – you said at the – at the start that each debtor must – must have the intent. So if we were to reverse as to Peggy, but not to reverse as to Doug, what would be the consequences of that? Well, the consequences obviously are beneficial to Peggy Jennings. And I would ask that It would go back to the bankruptcy court for trial? Well, I – actually, I think that the evidence in this case is such that this Court should dismiss Peggy Jennings because, frankly, they put I didn't see – I didn't see – I don't – I didn't see that that was on the table, Counsel. I didn't see that that was part of the argument. So let's – let's just deal with Then If we thought that – if we thought that summary judgment was improvidently granted with respect to Peggy, then this would go back to trial. This would go back to trial, and I would make a motion at that point in time, based on the record, because I can Look, I'm just trying to – I'm just trying to figure out how you separate the husband and wife here with respect to this. So if she were – if it were found that she had not engaged in the fraud and embezzlement, then what happens? What happens to the estate? Well, what happens to the estate? What happens to the bankruptcy proceeding? Oh, the bankruptcy proceeding is still going on. As to this adversary proceeding, I am only representing them in this adversary proceeding. I'm not their bankruptcy attorney. So I can't speak as to what their bankruptcy attorney would do. So if they just find that the husband has bad intent but the wife doesn't have bad intent, I'm still trying to figure out what happens. What does that mean? This particular debt is not executable if I'm successful in my motion to dismiss, because I'd represent to the court that that's the best evidence they have. The best evidence has already been presented, and I would make a motion for judgment at that point in time on dismissal. And if I was successful in that regard, this debt is dischargeable as to her. She's an individual debtor in this particular case. And they don't – they don't divide the debt into half and allow part of it to be non-dischargeable and part of it to be dischargeable. That's a little bit beyond my purview. I'm not a bankruptcy expert, but I am informed by bankruptcy counsel that is the case, that she doesn't acquire the non-dischargeable debts in a community property state even of the debts of Mr. Jennings. So this is extremely important to Peggy Jennings that she not have to be burdened with that particular debt. And that's the purpose behind each one of these debtors. Even in agency principle law, you have to have the culpability of each one of these. Have I satisfied your inquiry, Your Honor? I think so. Thank you, Your Honor. Well, with regard to – the point I left was the fiduciary capacity. So in that regard, it has to be on the particular transaction. And the particular transaction that the Court found created some kind of fiduciary capacity was that Mr. Jennings had the unrecorded deed. Now, the Court made a determination that he was holding the unrecorded deed of 2004 for the appellees. That's not the issue – excuse me, that's not the evidence. Mr. Jennings, the evidence is, is that he took the unrecorded deed and held it because he had informed the appellees early on that I can't have this recorded. We're not going to do this underlying transaction if the deed is going to be recorded because it's going to trigger a due on sale clause. And I'm not going to – I'm not going to allow you to now come in and cause myself and another owner in the property to have to pay a higher interest rate. All right? And so he was holding that deed. That is important evidence, and it's in his declaration. He was holding that deed for his purpose. Now, that's a fact. That's a fact in dispute. And it's not that he's holding the deed as an entrustment. It would trigger what clause? Pardon? What clause would it trigger? It would have caused the due on sale clause under the underlying – underlying note. And that was not acceptable. And it was acceptable to the appellees that, okay, you know, we need this transaction 1031 to occur, and we're agreeable that it not be recorded. But he was holding it for his purpose. But it says – doesn't the deed on it say – doesn't it have an annotation at the top that says for recording? No. It says when recorded. It doesn't say for recording. It says when recorded. That's a very typical statement as to where the deed will go, the copy of the deed will go. And at that point in time, when the deed was created, a warranty deed, when it was created, Mr. Jennings put that when recorded. Now, that's a question in dispute as a matter of fact, Your Honor, and I'm glad you bring that up because the other side wants to say, well, that shows evidence that he was holding it on their behalf. No. That is at least evidence in dispute. And Mr. Jennings explained that, clearly, I don't want the deed recorded. And, two, I'm holding it for me. That's the purpose that I have this. If I deliver the deed to them, the original deed to them, they can record it at any time. And now I have not received the benefit of my bargain in this particular case. And they've actually breached the contract. But my damages have already occurred. So that's all evidence that should have been presented through examination on the witness stand that the judge essentially ignored. That is not the standard for motions for summary judgment. Have I answered your inquiry, Your Honor? So that's where I feel that the Court, and you look at the Court's decision, they actually characterize the 2006 warranty deed as a fraudulent warranty deed. Now, Your Honors, a deed in and of itself is not fraudulent. It is the action. It is the conduct that permeates some kind of document's use. When he signed the 2006 warranty deed, he, there is evidence that he felt he had the right to hypothecate his own equity in that property. And, in fact, when the original underlying contract was entered into, the other side agreed that they don't get any of the appreciation. Their equity was set. They had a certain amount of investment. They had a certain amount of debt that they were required to obtain, leaving about $286,000 of equity in the property. That's required under 1031. That was their requirement. And he didn't want them piggybacking on his appreciated equity on a developed piece of property. And they were agreeable to that. So in the 2006 warranty deed, there's nothing prohibiting him from hypothecating his portion of it. And, in fact, when he went to the bank, the bank did an appraisal on the property. An issue that is in dispute as to whether or not he was getting a loan, he says he did. They say that he, they don't recall that. That's an issue in dispute. But when he went to the bank, he, the bank did an appraisal. The appraisal on the property was $3.3 million. That left $780,000-some-odd for the appellee's equity in the property. He did not, by virtue of entering into that 2006 warranty deed or going to the bank to hypothecate his equity that he had built into that property, show, excuse me, show culpable intent in and of itself as a matter of law. You can't say that when he's saying, I'm doing this for various reasons. And, particularly, when you have a contract, the, to find for the appellees in this case, not to reverse this case, this Court has to determine, as the bankruptcy judge should, that the intentional tort or the culpable intent has to arise independent of the contract. And that's never been done in this case. Counsel, you're down to less than a minute. Yes. Unless the Court has any questions, I'd like to reserve that last minute. Thank you very much. Mr. Vanderhoff? Yes, thank you. Good morning, Your Honors. I represent Ramos Properties in this matter. And there are certain key facts in this case that are simply undisputed. One is that Mr. Jennings was the attorney for the Ramos family. He had been practicing real property law for 40-some-odd years. He sold a piece of property that he owned to the Ramos family. They executed a deed. They paid him $1.3 million in cash. None of this is disputed or even controverted. He, I'm going to call him Mr. Jennings because he's since been disbarred. So Attorney Jennings, as in our papers. Mr. Jennings retained the deed, did not record the deed. Later, he and his wife executed a new deed transferring the property to him as his sole and separate property. Again, all this is undisputed and uncontroverted. He applied for a loan on which he lied on the loan application that there were no undisclosed interests in the property. He then borrowed about $1.1 million out of the property. Kept those proceeds. Eventually, the property went into foreclosure and the Ramoses lost their interest. The standard for summary judgment is not whether there's disputed evidence in the case. The standard is whether once, based on the undisputed facts that we've laid out in our papers, then the non-moving party needs to come back and show that there's evidence and material fact that could convince a reasonable trier of fact to fine for the non-moving party. That's the test here. And that's the test that the bankruptcy judge and the district judge both applied in this case. Now, the district court and the bankruptcy court didn't make factual, you know, didn't weigh evidence and make factual finding. But they know what a reasonable finder of fact is going to be able to believe and what would counter the undisputed evidence. They both sit as finders of fact on when they conduct bench trials. And they both examined this case, you know, very carefully. Mr. Jennings' argument in this case and his testimony in this case was essentially that he had an option to repurchase a property. And that's what he was doing. Now, how do you exercise an option to purchase property? You open an escrow. You contact the owner of the property. The owner of the property puts a deed into escrow with escrow instructions and says, when you have $1.3 million, you can record the deed. The buyer goes to a lender. The lender puts a deed of trust in there so you can record it. Once you have, you're ready to record the deed. And then when the escrow closes, the money is paid from the seller to the buyer. Now, Mr. Jennings, who is not just a lawyer, he's a real estate lawyer. He's been doing it for 40 years. He testified that he had conducted over 300 real estate transactions. His idea, and this is his explanation of how we have these two deeds and how this all came about. His wanted to exercise the option to repurchase property. So I needed the money to do that. So in essence, what he did is, so he, so how does he do it? So he forges, he and his wife forge a deed on property that they don't own, conveying the property to him, knowing that the deed to Mr. Jennings' client had not been recorded because it's sitting in Mr. Jennings' desk drawer or in a bank. They forge that deed fraudulently. They go to a bank to apply for a loan. They lie to the bank that there's no secret, no secret interest or undisclosed interest in this property. And then they get the money. Okay, now they're ready to repurchase property. Except they don't repurchase the property. They just keep the money. That's his explanation. No reasonable finder of fact could ever find that compelling enough to overcome the facts, the undisputed facts of what we have in this case, is that these are real estate professionals. Mr. Ramos had only an eighth grade education. They forged documents. They didn't record the deed, even though it says right on it. You keep using the pronoun they by referring to both Mr. and Mrs. Jennings. Yes. And I guess I'm a little troubled by the evidence with respect to her involvement. Would you address that please? Because as I understand it, all of this grew out of his representation of Ramos in various proceedings. Yeah, let's talk about her involvement. And remember that she'd been a real estate broker for 30 years. So she's very familiar with real estate transactions. So she signs the original deed. That doesn't make her an attorney who's representing. No, no, she's not an attorney. So in the initial transaction, she signs a deed to the Ramos family in exchange, that's going to be in exchange for 1.3 million dollars in cash. Now for anyone who's ever got a loan on their home or purchased or sold a home, deeds aren't like other documents. They haven't been notarized. So it's not just like here's a stack of papers, just sign them. I mean you actually have to go to the notary, the notary opens the book, you have to sign the book. Sometimes you have to put your hand up and swear. You have to put the thumbprint in the book. So, and she's a real estate broker. She knows what this means. She's conveying a piece of property. And then two years later, she's conveying the same piece of property. Now, who received the money, the 1.3 million dollars? Yeah, she testified that she didn't know what she was signing. She didn't pay any attention to it. She said, Doug just puts this in front of me. I've done this before, told me to sign. I just signed. I didn't read it. Now, if we credit that testimony, I understand your argument is that's not credible. Right. But that seems to me to be a jury argument as to whether she's credible or not credible. Yeah, I don't, yeah. I don't think it necessarily rises to a jury argument if it's not sufficient to overcome the facts that she signed a document, a notarized document. Right, that would just be strict liability for signing the document. We're down here to the question of intent. If she hasn't looked at the documents, so she doesn't know what she's signing, is she still guilty of fraud? Fraud was not an issue in this case, Your Honor. Okay, well, defalcation, embezzlement, whatever the. Well, it's a very important distinction. It's a very important distinction because Judge Adler found that there wasn't other causes of action don't require fraudulent intent. For example, embezzlement only requires that there be circumstances of fraud related to the transaction. And, for example, him lying on the, him lying on the loan application, the fact that she's, that she's signing a deed of trust that she's already, that she's already conveyed once before. Those are circumstances of fraud. It doesn't require fraudulent intent on her part. And don't forget that she was, that there was also civil conspiracy as to these things. Defalcation while acting in a fiduciary capacity requires no intent whatsoever. It simply requires. So what's, so what is Mrs. Jennings found guilty of here? In the bankruptcy sense, guilty. Why is it non-dischargeable? Yes, what. If it's not fraud, it was what? Right, embezzlement. Okay. So it's not defalcation? I think she was found civil, I think she was found civil conspiracy for defalcation as well. Okay, now we ought to be able to figure this out very quickly. Where, where is this in the, in the district, in the bankruptcy judge's findings? Boy, unfortunately I don't have that in front of me. Yeah, I apologize, Your Honor, I don't have that. So I've got paragraph four, I've got larceny and embezzlement, and then a willful and malicious injury. Are those different things or is it just larceny and embezzlement? Those are different things. Larceny is one thing, embezzlement's another thing. Right. Willful injury is another thing. Willful, willful injury only requires that, that you did an act that, that, that harmed another person's property and that, that you intended the, the act that you did. And here when she signed the second deed on the property, it was, it was injuring the, the, the, the property. Let's, if I could shift gears just for a moment. Yeah, I, I, I still, I have to be honest, counsel, I still don't feel like you've answered my question. Okay, what's, tell me your question again. What is the evidence of, that she had some kind of intent? I, I, I don't think that you can get to larceny, embezzlement, willful and malicious injury without showing some kind of intent on her part. Now, if she testifies, I didn't know what I was signing, then how do you, how do you get, Pat, how do you get, how do you prove intent? Well, again, um. I, I understand. You don't, you don't believe her. Yeah, embezzlement doesn't require intent. And you don't think a jury's going to believe her. No, no. But the question is, at this stage, if that's what she's alleging, how is she, how are you entitled to summary judgment on this question? Well, embezzlement doesn't require intent. Now, what does it require? It requires, um. I mean, if it doesn't require, if it's just circumstances of fraud, but fraud requires intent. Free requirements. Property right, rightfully in the possession of a non-owner, which this is the case because they're releasing the property. Non-owner's appropriation of the property, um, other than the use for which it was entrusted, which is, which is met here. Circumstances indicating fraud. And there's certainly circumstances indicating fraud. Um, not the least of which is, remember, the property, the, the company leasing the property is solely owned by her. She's a president of the company. She testifies she's the sole employee of the company. Leased that property for five years, including two years after she conveyed the property to her husband. Now, why would someone convey a property to their husband and then continue to pay rent to lease that property from the Ramos family? That's certainly circumstances indicating, uh, uh, indicating fraud. It seems like, you know, we. It doesn't require fraudulent intent. But there was something, there was obviously something, uh, you know, she knew that there was obviously something not right here. When I asked her in deposition, um, I said, well, you know, first I asked her about the company. Oh, yes, it's my company. You know, I do like decorating. And, uh, are you the president? Yes. Are there any other officers? No. Are there any other employees? No. Okay, well, after you signed this deed, did you notice that the next day there was a million, a million three of cash in your bank account? No, my, you know, my husband's law firm takes care of that. Well, you've, you never opened, you never opened a bank statement? Let me ask you a question. So another way of getting at this point is to say that how, how could the bankruptcy judge have gotten to this conclusion without making a credibility finding? The only way to get there is to say that everything she said in her deposition is untrue. That's so, so there has to be, it has to be the, the fact that the bankruptcy court judged her credibility. No, I, yeah, no, I, I, I disagree, um, respectfully. Um, because the facts that are undisputed that, I mean, when you have two grant deeds, both notarized, both signed by her, conveying the same property twice. Well, but it's strict liability then, right? It's strict liability. It's like Judge Bybee asked you earlier. It's strict liability then for her. No, what I'm saying is that, is that when you have these two deeds, there are certain inferences that can be drawn from that. Which is that she's, she sold the same property twice. Um, now once you establish that, the person, you know, the, the non-moving party has to bring evidence that a reasonable finder of fact would be convinced by. Now she says she didn't know we're on summary judgment, aren't we? Right. That would never, that would never convince a trier of fact that that's not the question. You didn't know there was a million dollars in your account. Uh, no. Counsel, if we, if we, if we disagree with the, with the, with the district judge and the bankruptcy judge with respect to Mrs. Jennings, and this goes back for trial, who's, who's going to conduct the trial? The district court or the bankruptcy court? Uh, bankruptcy court probably. Is it conducted before a jury? Is it conducted by the district? Uh, yeah, not a jury, um, because it's not dischargeability. So it'll be sent back before the same judge, before Judge Adler again. That's right. Um, but this time it would be a trial. That's right. It'd be a bench trial. Yeah. And, and do a, you know, and I think that's an important point because, um, when you have the same person who would conduct a trial, grant summary judgment, and you say, well, this should have been, you know, uh, should have been put before a finder of fact. Well, she is a finder of fact. And that, that makes, uh, you know, the risk of, of someone losing some right. But she would, she would have the opportunity to testify in front of the judge instead of having the judge look at her deposition. Right. Although as Judge Benitez pointed out, you know, um, and he did this on his own. I mean, he, he, he went over this case for, you know, for, for months. He actually went into the deposition transcript and counted the number of times that she claimed that she didn't, uh, remember or didn't know. I mean, basically every significant question. And we don't, we don't, but we don't usually decide things on the basis of deposition. So it's not like she's, it's not like she's going to add more at a trial because she's already has a deposition that says she, she doesn't remember or doesn't know every significant question that was asked for her. He counted them. I, I forget the number. It was like 140 times or something. Um, but that would be before, uh, before, um, Judge Adler. And certainly, I mean, one thing that, that concerns me is that, uh, you look at this Tradewinds, you know, the way that they used this, uh, Tradewinds company that they used is that, you know, the Jennings basically, um, use, you know, entities to, to harbor assets, uh, so that they, you know, they, they can't be found by people or they can't be accessed by people. And one important reason for having Peggy Jennings on this, on this, uh, judgment as well is that if she's not on the judgment, um, you know, basically, uh, Mr. Jennings will never own property again in his life. They'll all be owned in the, in the name of Peggy Jennings. And frankly, my clients probably can't afford to, yeah, they haven't gotten a penny on this case. They were, they were cheated out of over their life savings. Basically they can't afford to, to retry this case. So, so there, there would be a tremendous, uh, miscarriage of justice, I think. But, but, but there is overwhelming evidence, I think, um, of Peggy Jennings. And the important thing is that most of these things don't require specific fraudulent intent. Um, but, uh, but how do you get past the fact that she, that she basically sold the same property twice? In, in, in other words, you're saying that if you, if you look at the entire, the, the, the, the bankruptcy court and the district court looked at the entire record and looked at her statements concerning what she knew and didn't know. And, and so there's no genuine issue of material fact here. Yeah, it, um, particularly the district court, uh, I was surprised, uh, you know, um, the, the decision was under submission for, for many months. And when it came out, when I was reading it, when he made reference to the number of times that she had, had said in her deposition, she didn't remember or didn't know. Um, that wasn't something that was in our briefs. Um, that was something that, that he had taken on himself to, to go through the, the underlying evidence itself, the transcripts page by page and actually count the number of times she had done that. Um, so, you know, he did a de novo review in the, in the truest sense of the word of actually going back to the original evidence and reviewing it in detail. Even portions that, uh, that were not even mentioned, uh, in the briefs. Uh, so I think between the, the bankruptcy court and the district court, um, the, the, the decisions that came out were the right decisions and, um, uh, and are well supported by the record. I, we've taken you well over your time, Mr. Vanderhoff, unless we have further questions. Thank you. Thank you, Mr. Tremblay. And I will afford you, um, because we took Mr. Vanderhoff over, I'm going to afford you. Let's see if we can put two minutes on. Thank you, Your Honors. First of all, embezzlement does require intent to defraud. That was established in Trans-American Commercial Financial Corp versus Littlejohn, in Ray Littlejohn by this circuit court, 942 Fed 2nd, 551 and 556. Counsel's wrong. Embezzlement does require intent to defraud. You can show it by circumstances, but you have to show the intent to defraud. And that's, what's missing with Peggy Jennings. And cor, correspondingly, on the last point with regard to, I, um, both the determinations by the bankruptcy judge and the district court judge, I invite the court to again, read both of those decisions. When you go back into your chambers, you will determine that the improper standard was used as that standard has now been established in animal legal fund. Okay. Counsel, do you disagree with Mr. Vanderhoff that if this goes back, that it would be tried, it would be bench trial before the bankruptcy court? I, I don't disagree with that. I, this is a core proceeding. It has to go back to the bankruptcy judge. Did Mrs. Jennings ever appear in person before the bankruptcy court? No, never. And that, and, and also neither did the appellees. I never had a chance to cross-examine them. You know, every time that, um, my, my, uh, uh, uh, colleague stands here and says, well, this and that shows this and that, that's what trials are for. You know, you're an appellate court. Uh, you're not a trial court. And at a motion for summary judgment, uh, the, uh, the, the injustice that was done here was the fact that there wasn't a fair and full hearing of the arguments and counter-arguments. And this is particularly important when we're talking about intent. These non-dischargeability statutes are extremely important to both the creditors and the debtors, but the creditors have a high bar, especially on fiduciary capacity. There is a real serious concern here about fiduciary capacity, and certainly there's none by Peggy Jennings. The mere fact that she's 30 years, a licensed broker, but what counsel doesn't tell you in the, uh, in, in, uh, the evidence is that she wasn't actively acting as a broker. She hadn't done any transactions in years, and she certainly wasn't a broker for these individuals. That's undisputed. So what's happening to Peggy Jennings, it's a guilt by association. That's an injustice. There's no other way to cut that. Now with regard to conspiracy, there was this point made about conspiracy. Now there's persuasive authority in an unpublished opinion and under federal rules of appellate procedure 32 one, I can mention that it is available, uh, online, but I have copies in case the court wants to see it. And that is that civil conspiracy does not meet the requirement for these types of frauds. That's in the particular decision. Counsel, is this something that you've cited in your brief? No, I did not, but I'm bringing it up now because did you provide it? Did you provide it to opposing counsel? I can now, and it's, if you'd like, if you'd like to do that, you should provide copies to the, to the clerk and to the court. You can do that after we're, after we're finished here, you're, you're now well over your time. Okay. Very well. Your honor, may I make the citation? Yes. Okay. The citation is, uh, in Ray, Kevin Chen, that would be lock versus Chen. It is a bankruptcy appellate decision. It is bankruptcy appellate number NC071268. If you provide, if you provide the copies to the clerk for us and for opposing counsel, uh, we will have all of that information. I'm showing on my clock. I still have a minute and a half. No, you're, you're, you're, you're, it's rising up. You're showing that you're now a minute 40 over. Oh, I'm sorry. I thought I had two minutes added on. I didn't realize. It fools everybody, but. Okay. Thank you very much. Unless you have any questions, I'll stand down. Okay. Thank you. Thank you, counsel. Uh, Jennings versus, uh, Ramos properties is, uh, is submitted. And the last case on the oral argument calendar is Dang versus Spearman.
judges: Schroeder, Bybee, Smith